## FIDELITY AND DEPOSIT COMPANY OF MARYLAND

v.

## Milton A. CALESNICK.

### Civ. A. No. 78–3252.

United States District Court,
E. D. Pennsylvania.

Sept. 14, 1979.

---

William B. Carr, Jr., Esq., Philadelphia, Pa., for plaintiff.

Milton Calesnick, pro se.

POLLAK, District Judge.

In this diversity action, plaintiff Fidelity and Deposit Company of Maryland, a Maryland corporation, has moved for summary judgment to recover the sum of $12,313.24 (including prejudgment interest) expended by it in fulfilling the terms of a sheriff's interpleader bond issued on behalf of defendant Milton Calesnick, a citizen of Pennsylvania. The interpleader bond was issued in August 1972, as security in order to obtain the return of property seized by the Sheriff of Philadelphia from Calesnick in satisfaction of a judgment entered, pursuant to arbitration, in the Philadelphia Court of Common Pleas, in favor of Food Additives, Inc. and against Cal-Vet Laboratories, Inc., a corporation owned by Calesnick. Subsequently, Helm New York Chemical Corporation, another judgment creditor of Cal-Vet, Inc., levied against the same property; Helm thus became a party to the Sheriff's interpleader action, entitled to claim on the Sheriff's bond if its claim to the property was sustained. See Pa.R. Civ.P. 3208(c); 12 P.S. § 2360.

Calesnick's claims to the property, as against both Food Additives and Helm, were denied by the Sheriff. The Sheriff's decisions were upheld by arbitration panels of the Court of Common Pleas, and then by Judge Takiff of that Court.

Calesnick appealed both adverse decisions to the Pennsylvania Superior Court. His appeal against Food Additives was quashed on November 19, 1976; his petition to reinstate the appeal was denied January 26, 1977. His appeal against Helm was non prossed on February 28, 1977. In neither case was a petition for allocatur filed within thirty days in the Pennsylvania Supreme Court. See Pa.R.App.Proc. 1113. Payment of Food Additives' claim was made on March 1, 1977, and of Helm's claim on November 11, 1977.

All of the above facts are either admitted by Calesnick's *pro se* answer to Fidelity's complaint or they are documented, without contradiction, by Fidelity's affidavits or related papers. Calesnick's only defense is that procedural irregularities in the Superior Court's processing of his appeals prevented him from presenting meritorious claims in that court. He argues that Fidelity

should not have made payments on the bond because it could have discovered those irregularities by examination of the docket sheets in the two cases.

There appear to be no Pennsylvania cases stating the time at which the surety's liability on a sheriff's interpleader bond matures. The proper rule would seem to be that the surety becomes liable to pay a claimant for the property at the time at which the judgment supporting the claimant's right to the property becomes final and unappealable. In each of these two instances, that was thirty days after the entry of the last order of the Superior Court.

This appears to be the rule operating in Pennsylvania concerning other types of bonds issued in connection with adjudicatory proceedings. In *Winsor v. Farmers' & Mechanics' National Bank*, 81½ Pa. 304 (1875), a surety for a stay of execution was not permitted to raise a defense which the principal might have raised in the original action against him after the judgment in that action became final. See also *Commonwealth v. Fidelity & Deposit Co.*, 224 Pa. 95, 73 A. 327 (1909) (bond for fiduciary of estate). In *Commonwealth v. McMenamin*, 122 Pa.Super. 91, 100–01, 184 A. 679 (1936), the court held that the surety became liable on a penal bond securing the principal's obedience to the state's liquor laws upon the failure of the principal to appeal from administrative action finding the principal in violation of those laws and revoking his liquor license.

Calesnick's argument that Fidelity should not have made payments on the bond because an inspection of the Superior Court docket sheets would have revealed procedural irregularities must be rejected. In *Commonwealth v. McMenamin, supra,* the Superior Court was presented with a similar problem: After determining that the record of earlier proceedings at Quarter Sessions, resulting in the revocation of the principal's liquor license, did not disclose a lack of jurisdiction or a failure to hold a hearing, the court held that "the unappealed from order of revocation entered against McMenamin is conclusive against

his surety." *Id.* at 100, 184 A. at 682. If the surety may not, in a collateral action, obtain review of the regularity of proceedings against the principal, then surely the principal should not be entitled to such review in defending against the surety's claim for indemnity.

In paragraph 20 of his answer, Calesnick admits that the surety contract requires him to indemnify Fidelity & Deposit Co. for the elements of damage which it claims. Prejudgment interest is due on these claims as liquidated damages arising from a contract action. See, e. g., *Sun Shipbuilding & Dry Dock Co. v. United States Lines, Inc.*, 439 F.Supp. 671 (E.D.Pa. 1977) (Cahn, J.), *aff'd without opinion* 582 F.2d 1276 (3d Cir. 1978), cert. denied, 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979); *J. Purdy Cope Hotels Co. v. Fidelity Phenix Fire Ins. Co.*, 126 Pa.Super. 260, 265, 191 A. 636, 639 (1937).

Summary judgment will therefore be entered for Fidelity & Deposit Co. in the amount of $12,313.24.